JAMES RANDALL CREEL, EMPLOYEE, PLAINTIFF-APPELLANT v. TOWN OF DOVER, SELF-INSURED EMPLOYER (ADMINISTERED BY GAB BUSINESS SERVICES, INC.), DEFENDANT-APPELLANT

No. COA96-47

(Filed 1 July 1997)

1. **Workers' Compensation § 475 (NCI4th)— attorney fees— no findings by Commission—not raised in superior court**

Plaintiff's appeal from an Industrial Commission decision as to attorney fees was dismissed where the findings and conclusions of the Deputy Commissioner contained no findings regarding attorney fees, plaintiff registered no complaint regarding this omission in his appeal to the Commission, and the Opinion and Award of the Commission did not address the issue. Neither plaintiff nor his attorney complied with the statutory procedure; had he or his attorney brought the matter to the superior court, the Commission would have been compelled to explain its failure to award counsel fees. N.C.G.S. § 97-90.

**Am Jur 2d, Workers' Compensation §§ 724-726.**

2. **Workers' Compensation § 114 (NCI4th)— mayor injured while going to move city truck—injury arising out of employment**

The Industrial Commission did not err in determining that a workers' compensation plaintiff sustained an injury arising out of and in the course of his employment as mayor of a town where the Commission found that a city-owned truck was parked across a street to block heavy traffic during construction; the truck was

CREEL v. TOWN OF DOVER

[126 N.C. App. 547 (1997)]

left in place at the end of the day; plaintiff, who had keys to the truck, responded to a telephone call by riding his bicycle to move the truck; and he was injured on the way. The Commission's findings reflect a reasonable relationship between plaintiff's trip to move the truck and his employment as mayor and fully support the Commission's conclusion of law that plaintiff sustained injury arising out of his employment.

**Am Jur 2d, Workers' Compensation §§ 264-270.**

**Workmen's compensation: injury sustained while attending employer-sponsored social affair as arising out of and in the course of employment. 47 ALR3d 566.**

3. **Workers' Compensation § 121 (NCI4th)— mayor injured while going to move city truck—allegations that mayor negligent—unavailing**

A workers' compensation plaintiff was not barred from compensation where plaintiff was the mayor of a town; a city-owned truck parked across a street during construction was left in place at the end of the day; plaintiff had keys to the truck and was called; he rode his bicycle toward the truck, stopping for a drink at his place of business; and he was injured when he resumed his ride. Although defendant contends that plaintiff chose to perform his duties in an illogical, grossly inefficient manner, the sole circumstances in which the fault of an employee bars benefits are when the injury was proximately caused by intoxication or being under the influence of a controlled substance, or when the injury was proximately caused by the employees's willful intention to injure or kill himself or another.

**Am Jur 2d, Workers' Compensation §§ 256, 503.**

4. **Workers' Compensation § 150 (NCI4th)— mayor injured while going to move city truck—no fixed time and place of employment—within the course of his employment**

A workers' compensation plaintiff was injured in the course of his employment where he was the mayor of a town in which a city-owned truck had been left parked across a street by a construction crew; he was called to move the truck because he had keys; his wife was dressed for bed and could not drive him; he decided to ride his bicycle because he would be unable to drive two vehicles back; he stopped at his business on the way for a drink; and he was injured when his bicycle struck a mound of dirt

CREEL v. TOWN OF DOVER

[126 N.C. App. 547 (1997)]

left by the construction crew. Although defendant argues that plaintiff had no identifiable time and space limits on his employment and thus cannot take advantage of the special errand exception to the coming and going rule, if plaintiff had no fixed time and place of employment, his journey to move the truck would fall within the course of his employment in that he would be in the category of workers whose jobs expose them to the risk of travel.

**Am Jur 2d, Workers' Compensation §§ 264-270.**

**Modern status as to duration of employment where contract specifies no term but fixes daily or longer compensation. 93 ALR3d 659.**

5. **Workers' Compensation § 139 (NCI4th)— mayor injured while going to move city truck—personal deviation—journey resumed**

The evidence supported the Industrial Commission's finding that a workers' compensation plaintiff was injured after his personal deviation had been completed and his direct business route resumed where plaintiff was the mayor of a town; he was called at night at his home on Kornegay Street to move a city truck which construction crews had left blocking a street; he rode his bicycle so that he would not have two motor vehicles on the scene; he chose a Carmichael Street route which he thought would be safer and stopped for a drink at his business place on the corner of Kornegay and Carmichael Streets; he was injured when he resumed his trip and his bike struck a mound of dirt left by the construction crew; plaintiff testified that he rode his bike off his property onto Carmichael before the accident; and his daughter identified a picture of Carmichael as where he had fallen.

**Am Jur 2d, Workers' Compensation § 293.**

6. **Workers' Compensation § 129 (NCI4th)— mayor injured while going to move city truck—alcoholic beverage en route—evidence of intoxication insufficient**

The Industrial Commission did not err by concluding that defendant failed to prove that intoxication was a proximate cause of a workers' compensation plaintiff's injury where plaintiff was the mayor of a town who was called at night to move a city truck which workers had left blocking a street; plaintiff rode

his bicycle toward the site so that he would not have two vehicles on the scene; he stopped for a drink at his workplace on the way; and he was injured when he rode into a mound of dirt left by the construction crew. The relevant question in determining whether intoxication operates to bar benefits to a claimant under the Act is not whether the claimant was intoxicated, but whether the intoxication was more probably than not a cause in fact of the accident, and it is the province of the Commission to weigh any conflicting evidence regarding a claimant's intoxication and the contribution thereof to the accident. The evidence indisputably supports the portion of the Commission's finding that the drink consumed by plaintiff contained three ounces of alcohol and the indication that the exact amount was not precisely determined; in light of the Commission's finding that no appreciable amount of alcohol could have entered plaintiff's bloodstream by the time of the accident, a one ounce discrepancy in the amount of alcohol in the drink may not reasonably be said to have had an effect on the ultimate resolution; neither of the two medical experts whose depositions were presented by defendant expressed the opinion that plaintiff was intoxicated at the time of his accident or that intoxication proximately caused the accident; the Commission had before it evidence rebutting intoxication; and, assuming that defendant's evidence tended to show intoxication, that showing was countered by contrary evidence of plaintiff. The Commission is the sole judge of the credibility of witnesses appearing before it as well as the weight to be given their testimony.

**Am Jur 2d, Workers' Compensation §§ 256, 503.**

Appeal by plaintiff and defendant from Opinion and Award entered 21 September 1995 by the North Carolina Industrial Commission. Heard in the Court of Appeals 26 September 1996.

*Sumrell, Sugg, Carmichael & Ashton, P.A., by Rudolph A. Ashton, III, and Scott C. Hart, and Kellum & Jones, by Michael E. Garland, for plaintiff.*

*Brooks, Stevens & Pope, P.A., by Daniel C. Pope, Jr., Michael C. Sigmon, and Patricia Wilson Medynski for defendant.*

JOHN, Judge.

Defendant appeals determination by the North Carolina Industrial Commission (the Commission) that plaintiff, mayor of the

**CREEL v. TOWN OF DOVER**

[126 N.C. App. 547 (1997)]

Town of Dover, sustained an injury arising out of and in the course of his employment. Defendant also assigns error to the Commission's conclusion that there was insufficient evidence to show intoxication was a proximate cause of plaintiff's injury. We affirm the Commission.

Facts and procedural history pertinent to consideration of defendant's appeal included the following: On the evening of 3 September 1993, plaintiff's wife received a telephone call from a Dover alderman informing her a city-owned truck was blocking traffic on Johnson Street. She relayed this message to plaintiff, who possessed the keys to the truck. Plaintiff agreed to move the truck and set out to Johnson Street on a bicycle. However, plaintiff first stopped at his place of business, an auto service center, and consumed an alcoholic beverage. He thereafter returned to his bicycle and resumed his errand. Unfortunately, plaintiff struck a mound of dirt approximately thirty seconds later, was thrown from the bicycle, and was severely injured.

Following a hearing on plaintiff's claim for benefits under the Workers' Compensation Act (the Act), the Deputy Commissioner ruled plaintiff had sustained an injury by accident arising out of and in the course of his employment, that defendant had failed to prove intoxication was a proximate cause of plaintiff's injury, and that plaintiff was entitled to benefits under the Act. In an Opinion and Award filed 21 September 1995, the Full Commission essentially affirmed the findings and conclusions of the Deputy Commissioner. Defendant filed notice of appeal to this Court 20 October 1995.

[1] Plaintiff also appeals, assigning error to the Commission's failure "to make a finding as to attorney's fees." N.C.G.S. § 97-90 (1991 & 1996 Cum. Supp.) sets out the process through which counsel fees are approved by the Commission and also the procedure for disputing the Commission's decision on such matters. In the case *sub judice*, the Deputy Commissioner's Opinion and Award contained no findings regarding counsel fees. However, plaintiff registered no complaint regarding this omission in his appeal to the Commission, which likewise failed to address the issue in its Opinion and Award.

G.S. § 97-90 provides that in situations where there is no agreement between attorney and client about a compensation rate (as plaintiff's brief claims is the case here), the attorney or claimant may appeal a decision of the Commission regarding counsel fees to the superior court within five days of receipt of notice of the

CREEL v. TOWN OF DOVER

[126 N.C. App. 547 (1997)]

Commission's opinion. The Commission is then required to submit its findings and basis for the fee awarded to the superior court, which court then determines the appropriate fee to be allowed.

Neither plaintiff nor his attorney complied with the statutory procedure. Plaintiff claims he had no right to appeal the decision of the Commission to the superior court because the former's Opinion and Award omitted any reference to counsel fees. Plaintiff's argument is unpersuasive. Had he or his attorney brought the matter to the superior court in the manner set out in G.S. § 97-90, the Commission would thereby have been compelled to explain its failure to award counsel fees. Perhaps, as plaintiff claims, the Commission neglected to do so because of mere oversight. Whatever the explanation for the Commission's omission, however, neither plaintiff nor his attorney complied with G.S. § 97-90. Plaintiff's appeal of the Commission's decision (or lack thereof) as to counsel fees is therefore dismissed.

[2] In reviewing a decision of the Commission, our review is limited to two issues: (1) whether any competent evidence in the record supports the Commission's findings of fact, and (2) whether such findings of fact support the Commission's conclusions of law. *Moore v. Davis Auto Service*, 118 N.C. App. 624, 627, 456 S.E.2d 847, 850 (1995). Moreover, when there are no exceptions to the Commission's findings, they are binding on appeal. *Mabe v. Granite Corp.*, 15 N.C. App. 253, 255, 189 S.E.2d 804, 806 (1972).

Defendant first contends the Commission erred in determining plaintiff sustained an injury arising out of and in the course of his employment as mayor of the Town of Dover. A claimant may receive compensation under the Act only for injury by accident "arising out of and in the course of" his or her employment. N.C.G.S. § 97-2(6) (1991 & 1996 Cum. Supp.). Whether an injury arises out of and in the course of a claimant's employment is a mixed question of fact and law, and our review is thus limited to whether the findings and conclusions are supported by the evidence. *Hoyle v. Isenhour Brick and Tile Co.*, 306 N.C. 248, 251, 293 S.E.2d 196, 198 (1982).

The phrase "arising out of" refers to the requirement that there be some causal connection between the injury and claimant's employment. *Clark v. Burton Lines*, 272 N.C. 433, 437, 158 S.E.2d 569, 571 (1968). "In the course of" refers to the time and place constraints on the injury, *id.*; the injury must occur

during the period of employment at a place where an employee's duties are calculated to take him, and under circumstances in which the employee is engaged in an activity which he is authorized to undertake and which is calculated to further, directly or indirectly, the employer's business.

*Powers v. Lady's Funeral Home*, 306 N.C. 728, 730, 295 S.E.2d 473, 475 (1982).

[T]he two tests, although distinct, are interrelated and cannot be applied entirely independently. Rather, they are to be applied together to determine the issue of whether an accident is sufficiently work-related to come under the Act. Since the terms of the Act should be liberally construed in favor of compensation, deficiencies in one factor are sometimes allowed to be made up by strength in the other.

*Hoyle*, 306 N.C. at 252, 293 S.E.2d at 199.

We first address whether the Commission properly concluded plaintiff's injury "arose out of" his employment. The Commission made the following findings of fact, none of which have been excepted to by defendant and are therefore conclusive on appeal, *see Mabe*, 15 N.C. App. at 255, 189 S.E.2d at 806:

1. At the time of the 28 December 1994 hearing, plaintiff was 54 years old, with a date of birth of 2 February 1940. Plaintiff is self-employed and owns an auto service center. In addition to his business, plaintiff holds the elective office of mayor of defendant. In his position as mayor, plaintiff receives no wages.

2. On 3 September 1993 a city-owned truck was parked across traffic lanes on Johnson Street, a public road, to block traffic. The reason that the truck was used to block traffic was to prevent heavy construction equipment from driving on the road and damaging the pavement. After the workday was finished, no one from the town was instructed to move the truck; and it remained parked across traffic lanes.

3. Plaintiff had the keys to the truck, and members of the Board of Aldermen tried to locate plaintiff at his business which was next to his house. When they were unsuccessful in locating plaintiff, one of the aldermen telephoned plaintiff's house. Plaintiff's wife spoke to the alderman and told him that she did not know where plaintiff was. Later, she found plaintiff asleep on the couch

in the den (she had not heard him when he came home from work). She told plaintiff of the problems with the truck, and plaintiff left home to move the truck from the street.

The Commission's findings reflect a "reasonable relationship" between plaintiff's trip to move the city-owned truck from its position blocking traffic and his employment as mayor of Dover, and fully support the Commission's conclusion of law that plaintiff sustained injury "arising out of" his employment. *See Allred v. Allred-Gardner, Inc.*, 253 N.C. 554, 557, 117 S.E.2d 476, 479 (1960) (where "any reasonable relationship" with employment exists, court justified in upholding award as arising out of employment).

[3] Notwithstanding, defendant contends plaintiff chose to perform his duties in an "illogical, grossly inefficient" manner, thereby breaking the causal connection between his journey and his employment. In particular, defendant points to evidence plaintiff traveled on a bumpy road at night on a bicycle unequipped with a light, and that he stopped to drink alcohol in the course of his trip to move the truck.

However, assuming defendant's characterization of plaintiff's conduct as "illogical" and "grossly inefficient" constitutes an assertion plaintiff was negligent, negligence of an employee in performing his duties does not bar the employee from compensation under the Act. *Id.* at 556, 117 S.E.2d at 478. As Professor Larson pointedly observes:

> The right to compensation benefits depends on one simple test: Was there a work-connected injury? Negligence, and, for the most part, fault, are not in issue and cannot affect the result. Let the employer's conduct be flawless in its perfection, and let the employee's be abysmal in its clumsiness, rashness and ineptitude; if the accident arises out of and in the course of the employment, the employee receives an award. Reverse the positions, with a careless and stupid employer and a wholly innocent employee and the same award issues.

1 Arthur Larson & Lex K. Larson, *Larson's Workmen's Compensation Law* § 2.10, at 1-5 (1996).

The sole circumstances in which fault of an employee operates to bar workers' compensation benefits are (1) when the employee's injury was proximately caused by intoxication or being under the influence of a controlled substance, or (2) when the injury was proximately caused by the employee's willful intention to injure or kill

himself (or herself) or another. N.C.G.S. § 97-12 (1991); *Allred*, 253 N.C. at 556, 117 S.E.2d at 478. Further, the Act does not prohibit benefits based on an employee's intoxication at the time of injury; intoxication must *proximately cause* the injury in order to bar the employee's claim. *Inscoe v. Industries, Inc.*, 292 N.C. 210, 218, 232 S.E.2d 449, 453 (1977) (claimant intoxicated at time of automobile collision, but intoxication did not occasion the accident). Defendant's arguments asserting plaintiff is barred from benefits because he was negligent in the manner in which he traveled to the truck and because he drank alcohol prior to his injury are thus unavailing.

[4] Defendant next maintains the Commission erred in its conclusion of law that plaintiff sustained an injury "in the course of" his employment. We disagree.

The pertinent findings of the Commission, unexcepted to by defendant, are as follows:

4. Plaintiff's wife could not drive him to the truck because she was dressed to go to bed. Plaintiff decided to ride his bicycle to the truck because if he drove a car to the truck, he would be unable to drive both vehicles. Before riding to the truck, plaintiff stopped at his business and consumed a beverage containing two or three ounces of alcohol.

5. At the time plaintiff left for the truck, it was no longer daylight. Plaintiff rode to the truck by taking a route along Carmichael Street. There had been some construction along the side of the street, and the terrain was rough. A few moments after plaintiff had left his business, his bike struck a mound of dirt left by the construction crew. Plaintiff's bicycle stopped suddenly, and plaintiff was thrown over the handlebars. . . .

In challenging the Commission's conclusion plaintiff was injured in the course of his employment, defendant relies in the main upon what has been denominated the "coming and going" rule. As a general practice, injuries occurring while an employee is going to or coming from work are not compensable, *Kirk v. State of N.C. Dept. of Correction*, 121 N.C. App. 129, 131, 465 S.E.2d 301, 303 (1995), *disc. review allowed*, 343 N.C. 123, 468 S.E.2d 783, *review improv. granted*, 344 N.C. 624, 476 S.E.2d 105 (1996), the rationale being that the risk of injury while traveling to and from work is one common to the public at large, *Harless v. Flynn*, 1 N.C. App. 448, 458, 162 S.E.2d 47, 54 (1968). However, if an employee is injured while performing a

special duty or errand for the employer, the injury is compensable. *McBride v. Peony Corp.*, 84 N.C. App. 221, 227, 352 S.E.2d 236, 240 (1987). Professor Larson has summarized the "special errand" rule as follows:

> When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered [due to] the usual going and coming rule, the journey may be brought within the course of employment by the fact that the trouble and time of making the journey, or the special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

1 Larson § 16.11, at 4-204.

Defendant argues vigorously that plaintiff had "no identifiable time and space limits on his employment," and thus cannot take advantage of the "special errand" exception to the "coming and going" rule. Defendant cites testimony by plaintiff himself that the position of mayor did not constitute a "nine-to-five job," but rather "just about a twenty-four-hour-a-day job." Plaintiff also indicated that most of his duties were administered from his auto shop rather than Town Hall. In addition, plaintiff stated he frequently was called away from his home at unusual hours to attend to town business. On such occasions, he would travel to the location of the particular problem requiring his attention.

Defendant's objections miss the mark. If plaintiff had no fixed time and place of employment, his journey to move the truck would nonetheless fall within the course of his employment in that plaintiff would thereby be encompassed in that category of workers whose jobs expose them to the risk of travel. *See Warren v. City of Wilmington*, 43 N.C. App. 748, 750, 259 S.E.2d 786, 788 (1979) (plaintiff's work required her to travel to various places about the community).

> Employees whose work entails travel away from the employer's premises are held in the majority of jurisdiction[s] to be within the course of their employment continuously during the trip, except when a distinct depart[ure] on a personal errand is shown.

1A Larson § 25.00, at 5-275; *Clark*, 272 N.C. at 438, 158 S.E.2d at 572; *Kirk*, 121 N.C. App. at 132, 465 S.E.2d at 304. Moreover, employees with no definite time and place of employment, (Professor Larson

calls them "outside" employees, *see* 1 Larson § 16.02), are within the course of their employment when making a journey to perform a service on behalf of their employer. *See* 1 Larson §§ 16.00-16.01.

Therefore, the evidence to which defendant has pointed, *e.g.*, that plaintiff had no set hours of employment as mayor and was frequently called from his home to attend to town business, bolsters rather than detracts from the Commission's conclusion that plaintiff's accident occurred in the course of his employment.

[5] Defendant counters that plaintiff was injured while making a personal side-trip to his shop to drink alcohol and that no obligation of his employment placed him in the location where he was injured. We agree that

> [a]n identifiable deviation from a business trip for personal reasons takes the employee out of the course of his employment until he returns to the route of the business trip, unless the deviation is so small as to be regarded as insubstantial.

1 Larson § 19.00, at 4-352. However, an injury occurring after "the personal deviation has been completed and the direct business route has been resumed" is compensable. *Id.* at § 19.32; *see also Clark*, 272 N.C. at 436, 158 S.E.2d at 571 (even if employee deviated from employer's business the previous evening, he had returned to duties of employment at time of his death).

In the case *sub judice*, the evidence indicated two approximately equidistant routes were available to plaintiff in order to reach the city truck from his house—U.S. Highway 70 or the less frequently traveled Carmichael Street. Plaintiff explained he chose the latter route because he thought it would be safer. Plaintiff lived on Kornegay Street, and his auto shop was located nearby on the corner of Kornegay and Carmichael. Plaintiff testified he left home and rode to his shop where he had a drink. After the drink, he returned to his bike and began riding. He testified, "I come off of my property onto Carmichael. That's where the accident happened."

Defendant objects that there was no competent evidence to support the Commission's finding that, "Plaintiff rode to the truck by taking a route along Carmichael Street." Defendant insists the "uncontroverted evidence establishes that Plaintiff never made it onto Carmichael Street, but was thrown onto the roadside before ever making it onto the roadway." Therefore, defendant continues, plaintiff's "deviation had not ended at the time he was thrown from his

bicycle in that he had not yet resumed travel upon the roadway at a point where his business trip should have commenced." Defendant's assertion is unfounded.

As related above, defendant testified the accident occurred after he had driven "off of" his property and onto Carmichael Street. Further, a photograph of the location where plaintiff fell was introduced into evidence. Plaintiff's daughter, who first discovered plaintiff after his fall, testified regarding the photo: "It's a picture of Carmichael Road where he had fallen." In short, evidence in the record supports the Commission's finding that plaintiff was injured while riding to the truck on Carmichael Street at a point when his "personal deviation ha[d] been completed and the direct business route ha[d] been resumed," 1 Larson § 19.32.

[6] Finally, defendant interposes objections to the Commission's findings and conclusion regarding the role of intoxication in plaintiff's case. Prior to addressing defendant's final contentions, we first emphasize that we express no opinion as to plaintiff's decision to consume an alcoholic beverage while engaged in a task of his office as Mayor of the Town of Dover. While such conduct may be of concern to the local electorate, our role is limited solely to a consideration of whether the Commission's legal conclusions are sustained by its findings of fact. *Moore*, 118 N.C. App. at 627, 456 S.E.2d at 850.

The Commission's findings included the following:

4. . . . Before riding to the truck, plaintiff stopped at his business and consumed a beverage containing two or three ounces of alcohol.

. . . .

7. There is insufficient evidence of record from which the undersigned can infer from its greater weight that intoxication was a significant contributing factor to the incident on 3 September 1993. In fact, the evidence tends to rebut intoxication at the time of the accident since there was insufficient time from the consumption of the alcohol and the time of the accident for any appreciable amount of alcohol to enter plaintiff's bloodstream and travel to plaintiff's brain. . . .

Based upon its findings, the Commission concluded:

2. Defendant has failed to prove that intoxication was a proximate cause of plaintiff's injury by accident.

**CREEL v. TOWN OF DOVER**

[126 N.C. App. 547 (1997)]

We reiterate that the relevant question in determining whether intoxication operates to bar benefits to a claimant under the Act is not whether the claimant was intoxicated at the time of the accident, but whether the claimant's intoxication "was more probably than not a cause in fact of the accident." *Anderson v. Century Data Systems*, 71 N.C. App. 540, 545, 322 S.E.2d 638, 641 (1984), *disc. review denied*, 313 N.C. 327, 327 S.E.2d 887 (1985). On this affirmative defense, the burden of proof is upon the employer and not the employee. *Id.* Finally, it is the province of the Commission to weigh any conflicting evidence regarding a claimant's intoxication and the contribution thereof to the accident at issue. *Gaddy v. Anson Wood Products*, 92 N.C. App. 483, 487-88, 374 S.E.2d 477, 479 (1988).

Defendant initially contends no competent evidence supports the Commission's finding that plaintiff consumed a beverage containing "two or three ounces of alcohol." An examination of the record reveals the following: plaintiff testified he consumed a beverage containing Seagram's 7 and Pepsi and that he drank the beverage from a 16-ounce cup which was less than half full. He also indicated alcohol made up "probably not even half" the mixed drink and that the alcohol content was "three to four ounces probably." On cross-examination, he stated, "[The alcohol content] was probably around four ounces. It could have been more—I mean, a little less."

While the record admittedly lacks direct evidence the alcohol consumed by plaintiff comprised two ounces, the evidence indisputably supports that portion of the Commission's finding stating the drink contained three ounces of alcohol and the indication that the exact amount was not precisely determined. In any event, we do not believe a one-ounce discrepancy may reasonably be said to have had an effect on the Commission's ultimate resolution of the case—particularly in view of its further finding, supported by evidence in the record, that at the time of the accident no appreciable amount of alcohol could yet have entered plaintiff's bloodstream and affected his brain.

Defendant also insists the Commission "ignored" evidence plaintiff had a blood alcohol level reading of .117 two and one-half hours following his fall. However, neither of the two medical experts whose depositions were presented by defendant expressed the opinion, based upon plaintiff's blood alcohol reading, that plaintiff was intoxicated at the time of his accident nor that intoxication proximately caused the accident. The experts simply expressed the opinion that,

*assuming* plaintiff *was* intoxicated at that time, such intoxication *could have been* a contributing factor in his fall.

Moreover, the Commission had before it evidence rebutting intoxication. Plaintiff himself testified he had not yet felt the effects of the alcohol when his bicycle went out of control. Further, plaintiff's emergency room physician stated he made no notes regarding any signs of intoxication having been exhibited by plaintiff, and that in cases of traumatic injury it was his practice to record such signs if they were indeed present. Another physician indicated, based upon his reading of a leading medical textbook, that alcohol is absorbed from the stomach and intestines within a five-minute period after being consumed, and that its peak effects occur anywhere from thirty to ninety minutes following consumption. Plaintiff reported he consumed the alcoholic beverage in less than five minutes, that he then immediately mounted his bicycle and began riding, and that the accident occurred no more than thirty seconds thereafter. Plaintiff further indicated the bicycle flipped due to holes in the road created by construction of a new water line.

Even assuming *arguendo* defendant's evidence tended to show intoxication by plaintiff at the time of his accident and some connection between intoxication and plaintiff's fall, therefore, defendant's showing was countered by contrary evidence of plaintiff. As we have repeatedly held, the Commission, and not this Court, is "the sole judge of the credibility of witnesses" appearing before it as well as the weight to be given their testimony. *Pittman v. Thomas & Howard*, 122 N.C. App. 124, 129, 468 S.E.2d 283, 286, *disc. review denied*, 343 N.C. 513, 472 S.E.2d 18 (1996) (citation omitted). The Commission thus did not err in its conclusion of law that defendant failed to prove intoxication was a proximate cause of plaintiff's injury by accident.

Affirmed; plaintiff's appeal dismissed.

Judges WYNN and McGEE concur.